Good morning, your honors. May it please the court, my name is Douglas Caiappa, and I represent the appellant Susanna Orfescu. I'd like to reserve two minutes for my reply. The appellant believes that the district court's decision should be overturned based on clear error in the factual findings for the following reasons. As this court is aware, this is an ERISA claim for long-term disability benefits. Ms. Orfescu was the store manager at Noah's Bagels, submitted a disability claim based upon lumbar disc disease and spondylosis with neuropathy. After about a year and a half of submitting medical reports and evidence, Prudential finally accepted the claim and paid what is referred to as own occupation benefits for the initial two years of policy under the ERISA claim. The policy was converted after two years from an own occupation policy to an any occupation policy. It was at that time that Prudential terminated benefits. The district court awarded benefits to Ms. Orfescu for a brief time period from November of 1999 to March of 2000. It granted the benefits for any occupation, stating that Ms. Orfescu was disabled from any occupation based on her education, training, and experience. Based upon, in large part, the report of Dr. Salkinder in November of 1999, and terminated those benefits in March of 2000 based upon the report of Dr. Darrow. Let me ask you a question. That's part of Judge Cooper's order I don't quite get. Was there a change in Ms. Orfescu's condition from, what was it, 5-3-99 until November 13-99 when Judge Cooper starts the benefits again? No. No. And that's part of my brief. In essence, what I tried to do was to show the medical evidence compared to policy so that the benefits were paid from May to May, May 97 to May of 99. Right. Then there's a hiatus for a period of time. Right. From May to November. What happened in that time, to be absolutely fair and clear, is in May of 99, the policy converted, in essence, to an any occupation policy. standard for Ms. Orfescu to meet. But, what the point I try to make is, and it's a problem I have, one of the problems I had with the district court's analysis was that the only evidence in the record from beginning, from the beginning back in 96 until April of 99, which is the date of Dr. Kazantian's letter and report where he finds that she is in fact disabled, from any occupation, as the district court says that it suggests that, I would submit that it in fact concludes that and there's no evidence of the contrary, that she's disabled, she continues to be disabled in April of 99, and that the next report is November of 99, which is yes, she is disabled. But the only thing that's changed is the reports. The condition hasn't changed, right? Well, if it has changed, it has worsened. I guess what I don't understand about Judge Cooper's order, it doesn't seem to make any sense to me to have this gap. Right. Well, I'm certainly not going to argue with you there. Or she's not entitled to anything because her condition hasn't changed and Judge Cooper made a mistake in your client's favor. I mean, I just can't understand or reconcile the gap. Those are the exact words that I use in my opening brief, that it is not reconcilable to me. I suspect that Kelly would submit that because of the change in the policy lines from ONOC to ENEOC, that that would support Judge Cooper's decision. What relief exactly are you asking for? I mean, what do you want out of this? What's the bottom line of the case? I would focus on three things, I guess. The third one would be the attorney's fees under the Arizona statute. I mean, in terms of the benefits. The benefits would be this. Because if she says you're cut off on 314, even though she may have made a mistake in this gap business, if she says you're not disabled as of 314-2000. Correct. Then we have to find that that's clearly erroneous, even if she made a mistake in the earlier couple of months. Right. So the first part of it would be from May to November of 1999, that's where she should get benefits in that gap, in that six-month gap. That's the first part of the relief request. Was it her own occupation? In any occupation. Any occupation. She received full own occupation benefits for two years, and they were cut off after that two-year period pursuant to the terms of the plan. Then from May to November of 1999, from May it begins as in any occupation policy, the medical evidence supports a disability from any occupation, and the court confirms that in its ruling based upon Dr. Salpinder's report in November. The court admits that Dr. Kazanchian's report back in April also suggests disability from any occupation. I would submit that all the evidence to that point at least supports the disability from any occupation. So that gap period of six months should be paid. Then the next issue would be where the trial court cuts her off disability in March of 2000 based upon Dr. Darrow's report. I think you have to examine that report a little more closely. I cite to the language of the report where Dr. Darrow states that, if I can't find it, that it is mandatory that an MRI be conducted and an ENG be conducted to substantiate the objective medical evidence in the case. First of all, he's wrong. There was an ENG conducted back in, I believe, 1997, June of 1997, if you look to the record, in 520, which showed the severe deviations and elevations in the spine and supported disability. Second, you have all the medical evidence, including objective medical evidence, that supports the disability from own occupation and any occupation. And then Dr. Gart merely says, in March of 2000, I need an MRI to make a decision. Based on that, the trial court says, well, we're going to cut off benefits. To be fair, Dr. Gart did make other, did respond to Bradanchian's questions about the limitations that Orfescu had, finding that he thought she could return to work with, given certain limitations and restrictions. And then the final medical evidence on that would be a reference to the December 2000 report, I believe, asked of Abram Gart. If you get past the March date of Dr. Darrow and you look at the final piece of evidence, that's Abram Gart, who says, in effect, Ms. Orfescu, he confirms the findings of Dr. Salkind or says, Ms. Orfescu, in my opinion, needs surgical fusion and steroid injections, epidural steroid injections. So clearly that does not, and then he says, and based upon that, possibly in the future, she could return to work. I think he said it would be highly likely she could return to work. Let me ask you a question about the attorney's fees for a minute. How much are these monthly benefits? $1,833.34. She was asking at the time of the trial for a lifetime permanent disability. Correct. And what she was awarded was $1,833 times six? Roughly. Roughly, what, $12,000 in round numbers? I'm a little shy. How much were the attorneys' fees requested? I have a contingency agreement with her, but in terms of my actual time, I submitted an estimate in my brief, I believe, which was $30,000. Can I ask one question, just an overall question? This is a pain case. In other words, this is a pain case. There isn't a broken back where somebody has refused to repair something in the sense that the bones are all broken or whatever. She can't do what she has to do because of pain relating to her lumbar areas and the radiation of pain down the legs and whatever, right? Correct. Okay. And we are reviewing the district court's findings of fact for clear error? Correct. And this is basically a fact case? Yes and no. What's the no? Well, the court separated its order into findings of fact. Oh, I understand that. I believe there's a lot of overlap, Your Honor, in terms of, you know, the factual findings. You know, the court picking and choosing certain aspects of certain reports, that's fine. It's the court's prerogative. But to be fair, you have to look at the entirety of the record, the entirety of the report, and the factual findings of the doctors themselves. So to the extent that the court has different findings of fact from the reports of the doctors, I think it's clear error. And I think the reports of the doctors support the payments of benefits. And I think the error is clear. The first problem raised is the irreconcilability of payment of any occupation benefits beginning in November when nothing had really changed as of April. All right. Thank you. Thank you. I apologize for exceeding my time. No, I pushed you over. If it pleases the Court, I'm Ron Albert, counsel for Appellee Prudential. As with most appellees appearing before you after trial, our position is that Judge Cooper did the right thing. Judge Cooper did a very extensive review of a lengthy administrative record in this Sarissa case. She came to what we believe were generally the right conclusions. We obviously disagree with her opinion that Ms. Rofescu was disabled even for the period that she found her to be disabled. How do we reconcile that? I mean, did she have some kind of remission in her condition for six months? No, I think what Judge Cooper was doing was essentially in her prerogative bending over backwards to provide some benefits to Ms. Rofescu based on Dr. Salkinder's report and gave her as much as she felt she possibly could. That only makes sense if you find that she was not disabled for all occupations in May of 1999, then became disabled, totally disabled, for another six months, and then ceased being disabled after the six-month period. I don't see any evidence that she had this kind of up and down in her condition. Nor do I, Your Honor. I simply believe that, and the reason Prudential did not appeal that portion of the opinion was that, well, you know, this is, again, as has been mentioned, you're reviewing this based on a clear error. There is Dr. Salkinder's report, which provides some basis for Judge Cooper's determination, albeit I agree that there's a real problem because there is no change in condition. And for that reason, we decided not to appeal it. In retrospect, given the fact that part of what Judge Cooper was doing was applying the treating physician rule, which has obviously been overruled by the U.S. Supreme Court or something, maybe in retrospect we should have appealed that portion. Well, if you didn't appeal and there's this irreconcilable gap, aren't they entitled to at least six months from May 99 until November 13? Well, I think that we did not raise it as a cross-appeal. I think that we have waived our argument to have the Court reverse that part of the opinion. Given that it's – that would be clearly erroneous what Judge Cooper did, at least for that six-month period. By my estimation, yes, though, we did not appeal it. Right, but I'm saying the error is they're entitled to an additional six months from May 99 to November 1399. Oh, no, I would not agree with that. Because there's no evidence in the record that she had some kind of remission during that period. Well, that's true, but I don't believe that even up until that point. I think that the record is, I think, very, very complete. I think there's a tremendous amount of examinations and evaluations of the examinations, transferable skills reports, vocational reports. Frankly, this is one of the most developed records I have dealt with in many of my cases. And I believe that as of the end, the beginning of the anti-occupation period in May of 1999, the evidence was overwhelming that she was not disabled and she certainly could return to work. The part of this that's irreconcilable and perhaps clear was simply finding that even for a four- or five-month period,  so I don't believe there's any. The only inconsistency I find is the court's decision to award disability benefits for that short period. Counsel, I find these cases extremely disturbing as well as Social Security cases. And when the party stipulated to a de novo review, this case became almost a Social Security case because if you're under discretionary reviews of the administrator, then you get a whole new sort of platform to work with. Having gone to the point where we now review de novo and you have this many examinations, this many sort of nuances relative to what she felt, what she didn't feel, get an MRI, have an MRI, I found myself sort of awash in sort of areas, and that's why I ask the question, a lot of factual situations going back and forth. I also found myself where I do in Social Security cases, on this any occupation, if you can sit ten minutes and blink your eyes, you've got an occupation. I mean, I'm being ridiculous, but basically that's it. These vocational people can find almost any job for you to sit and blink your eyes. And so when they came to that point with all this conflicting, then are we down to saying, well, if you can fit in any occupation, which is pretty minimal, then you're not disabled, even though she says, you know, I'm having a hard time. So the judge did review all that. Now, where do we find the error in what he did, including what Judge Silverman said? Where do we find the error in all this on a clear error standard? Well, I don't believe there is an error. We're not arguing there was an error. We believe that Judge Cooper did the right thing. And I'm not arguing, even though I may personally believe, that Judge Cooper's four- or five-month period of finding disability is properly supported. So you're saying that's not clear. I'm trying to, because I heard your dialogue with Judge Silverman, you're not necessarily saying that's clear error. It just was within the scope of her determination and not necessarily clear whether she would have gone either way. Well, I personally and the company certainly would disagree with her conclusion, but we believe it is within the scope of her discretion to make the determination she did. How could she have come to that decision? How could she have come to a decision that says there was no permanent disability for that six-month period? Because the record up until throughout that entire period that we have, all of the doctor's reports indicate that she was, in fact, capable of a sedentary occupation. And then it is later confirmed by all of the subsequent medical information. So that at no time was she actually, no time following the beginning of the any-occupation period, was she disabled from any occupation based on her training and experience. Except for that six months. I would say including that six months, she was not disabled. But Judge Cooper found that she was. That's correct. And she did that based on some medical records in the file, and that is within her discretion to do, albeit we disagree with that finding. I'm not saying that. I mean, it's in her discretion if there is some evidence to support it. And if there's no evidence that she waxed and waned, then it doesn't, I mean, it just doesn't compute to me. That's right. And I agree. I'm saying there was plenty of evidence that, in fact, Ms. Zerfescu was not disabled. There was some evidence that I think Judge Cooper was essentially grasping onto to provide Ms. Zerfescu with something and use that to award benefits for a short period of time, which I disagree with and think was erroneous. But, again, I'm not arguing that because I think there's enough in the record that, based on the review this Court has, that you can't find clear error in her determination. I guess to seize on Judge Silverman's phrase, what was waxing and waning were the opinion of the doctors. In other words, they looked at a stable condition, and the opinions varied over time. But the ultimate decision was, at the end, that she was not disabled, even though there had been some question in their opinions up to then. Right. Well, each of them approaches their evaluation slightly differently and provides a different degree of reporting. And, you know, at the end, finally, I believe that the record was more than complete and answered the questions in between. But you're right. But I think that's true with any record of anyone's medical treatment generally. There is that sort of up and down, one doctor catching one thing, another doctor emphasizing something else, ignoring a condition that may have existed before. And, ultimately, a decision has to be made. Here, I think the decisions were made appropriately, based upon the objective medical evidence that could be obtained. And, ultimately, every test suggested was fine. And I believe Judge Cooper did an exhaustive review of a very lengthy record and ultimately came to the correct conclusion. All right. Thank you. Thank you. We ran you over your time. We'll give you a minute in rebuttal, if you'd like. Thank you. First, counsel admits that it was within the scope of the discretion of the judge to provide the benefits that she did provide. Well, if it's an error standard, it wouldn't be a discretionary standard. It should make clear error. Now, if that's discretionary, I don't know. This was counsel's statement. No, I understand that. All right. But if you start from that premise that he admits that it was within her discretion or it was not clear error to provide those six months of benefits from, well, maybe it's five months. November to March. November to March. And then that irreconcilability of the preceding six-month period is strengthened. I mean, if it's not error to give those benefits, I would think that it would be error to deny them, especially in light of the medical evidence that was in the record. And I would disagree that there is no objective medical evidence for the payment of benefits until the point of November of 1999. I mean, if the court looks at the medical evidence in the record, it all supports the payment of disability benefits to that woman. And through March of 2000, and I will submit March of 2000 changed nothing, other than to say that we need an MRI. And in December of 2000, the same thing. If she's disabled and to get better, she's going to need surgical fusion and steroid injections. Ms. Orfasky has never worked since, and she's been disabled the entire period of time. And the record supports that. I believe that the court's decision was error. All right. Thank you. The case just argued will be submitted.
judges: Brunetti, Tg Nelson, Silverman